UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MSO WASHINGTON, INC.,<br>a Washington Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>RSUI GROUP, INC., a foreign insurer;<br>RSUI INDEMNITY COMPANY, INC., a<br>foreign insurer and LANDMARK<br>AMERICAN INSURANCE COMPANY,<br>a wholly-owned subsidiary of RSUI<br>INDEMNITYCOMPANY, INC.,<br><br>                    Defendants. | CASE NO. C12-6090 RJB<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

This matter comes before the Court on the motion for summary judgment of Defendants

RSUI Group, Inc., Landmark American Insurance Company, and RSUI Indemnity Company,

Inc. (collectively, RSUI).  Dkt. 13.  RSUI seeks dismissal of Plaintiff MSO Washington, Inc.'s

(MSO) claims for wrongful denial of insurance coverage and failure to provide a defense

(contract claims), negligence, breach of duty of good faith, violation of the Washington

Consumer Protection Act, and violation of the Washington Insurance Fair Conduct Act.  Id. p. 1.

The Court has considered the pleadings in support of and in opposition to the motion and the record herein.

## INTRODUCTION AND BACKGROUND

MSO is a management services organization which contracts with licensed health care providers to provide administrative and management services. Dkt. 22-12 p. 2.  The services provided by MSO are set forth in the Management Services Agreement (MSA) executed by MSO and the contracting health care providers.  See Dkt. 22-12.  One of the primary responsibilities of MSO under the MSA is to provide billing and collection services on behalf of the contracting health care providers.  Id. p. 4.  Specifically, the agreement provides:

**2.2    Billing and Collection**.  On behalf of and for the account of Provider, MSO shall establish and maintain credit, billing, and collection policies and procedures, and shall be responsible for the billing and collection of all professional and other fees for all billable medical services provided by Provider.  In connection with the billing and collection services to be provided hereunder, and throughout the term of the Agreement, Provider hereby grants MSO a special power of attorney and appoints MSO as Provider's true and lawful agent and attorney-in-fact, and MSO hereby accepts such special power of attorney and appointment, for the following purposes:

    a.  To bill Provider's patients, in Provider's name  and on Provider's behalf, for all billable medical services provided by Provider;

    b.  To bill, in Provider's name  and  on Provider's behalf,  all claims  for reimbursement or indemnification from insurance companies, Medicare, Medicaid, and  all other  third-party  payers for all covered billable medical services provided by the Provider providers under contracts with such payers;

    c.  To collect  and  receive, in Provider's name  and  on Provider's behalf, all accounts receivable generated by such billings and claims for reimbursement or indemnification or otherwise delivered to MSO on Provider's behalf, and to deposit all amounts collected into the Provider account, which account shall be, and at all times shall remain, in Provider's name; and

    d.  To take possession of, endorse in the name of Provider, and deposit into the Provider account any notes, checks, money orders, insurance payments, and other instruments received in payment of accounts receivable for medical services.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 2

1

2
  Upon request of MSO, Provider shall execute and deliver to MSO or the financial institution wherein the Provider account is maintained, such additional documents or instruments as may be necessary to evidence or affect the special power of attorney

3
  granted to MSO by Provider pursuant to this Section.

4
  MSO shall have no ownership of or other entitlement to funds it collects on behalf of Provider, except as to any deduction for Management Fees as provided in this

5
  Agreement, and shall hold all such funds solely as agent for Provider.  MSO and Provider agree to establish such bank accounts or other financial institution arrangements as may

6
  be necessary to document and perfect the agency relationship between them.

7
Dkt. 22-12 pp. 4-5.

8
  On August 3, 2006, a federal False Claims Act (FCA) *qui tam* complaint was filed

9
against MSO, its sole shareholder Charles Plunkett, and certain physicians.  *United States, ex rel.*

10
*Brandler v. MSO Washington, Inc. et al*., C06-5473 RJB W. D. Washington (Tacoma).  Dkt. 1-1

11
pp. 1-18.  The complaint was filed *ex parte* and under seal.  Id.  The complaint alleged two

12
counts under the FCA: that the defendants (1) knowingly submitted false or fraudulent claims for

13
payment to the federal government, and (2) knowingly made or used false records or statements

14
to get false or fraudulent claims paid or approved by the government.  Id. pp. 16-17.  The

15
complaint alleged that MSO engaged in a scheme to defraud the United States through its health

16
insurance programs, including Medicare and Medicaid.  Id. p. 2.  The complaint states that MSO

17
provided "medical care delivered to the home and other non-medical office settings."  Id.  It

18
alleges that MSO used a computerized electronic medical records and billing program to

19
routinely "code up" services and place of service to billing codes that cost more, and that it used

20
"canned entries" to over-represent the services supplied to patients.  Id.  The complaint requested

21
treble damages, a civil penalty, an award to the relator (i.e., former employee/whistleblower),

22
and attorneys' fees and expenses.  Id. p. 17.

23

24

1    Because the complaint was filed under seal as required by federal law, it was not

2    immediately served on MSO or the other named defendants.  On May 5, 2008, the Inspector

3    General of the U.S. Department of Health and Human Services served subpoenas on MSO,

4    Plunkett, and certain other entities.  Dkt. 1-1 pp. 20-73.  The subpoena to MSO instructed it to

5    produce copies of records dating back to January 1, 2002, regarding, among other things,

6    electronic claims for health care services submitted to Medicare, Medicaid, or similar programs,

7    medical records, and Explanation of Benefits forms. Id. pp. 38-43. The subpoena stated that it

8    was "in connection with an investigation regarding the submission of possibly false, fraudulent,

9    or improper claims for payment under title XVIII of the Social Security Act . . ." Id. p. 38.  The

10   service of the subpoenas in May of 2008 provided MSO with the first indication that a claim was

11   being made against MSO. Dkt. 1 p. 3.  On May 23, 2008, MSO sent notice to RSUI of the

12   issued subpoenas and the potential claim.

13       RSUI issued a "Medical Professional Liability" claims-made basis insurance policy to

14   MSO under Policy No. LHM808920, with a policy period of February 20, 2008, to February 20,

15   2009.  Dkt. 15-1 p. 1.  The policy Declarations list the named insured as MSO Washington, Inc.,

16   and lists the "Named Insured's Professional Services" as "Medical Outpatient Facility."   Dkt.

17   15-1 p. 1.  MSO's application for the 2008-2009 policy described its professional activities and

18   specialty as "Primary Care, Medical Outpatient Facility." Dkt. 15-1 p. 19.

19       The policy states that it covers negligence in rendering professional services:

20   **Part I. Insuring Agreements**

21   **A.  Covered Services**

22   The Company will pay on behalf of the Insured, as shown in the Declarations, all
     sums that the Insured becomes legally obligated to pay as **Damages** and

23   associated **Claim Expenses** arising out of a negligent act, error or omission, even
     if such **Claim** is groundless, false or fraudulent, in the rendering of or failure to

24   render professional services as described in the Declarations, provided that the:

**1. Claim** is first made against the Insured during the **Policy Period,** and reported to the Company no later than thirty (30) days after the end of the **Policy Period.**

…

3. Negligent act, error or omission took place after the **Retroactive Date** as shown in the Declarations.

Dkt. 15-1 p. 3.

The policy requires RSUI to defend MSO against certain claims:

**B. Defense and Settlement**

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent.

Dkt. 15-1 p. 3.

The policy contains an exclusion for dishonesty:

**Part II. Exclusions**

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

…

E. Dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of the Insured.

Dkt. 15-1 p. 5.

The **Definitions** provision defines a claim as:

C. **Claim** means a written or verbal demand, including any incident, occurrence or offense which may reasonably be expected to result in a claim, received by the insured for money or services, including service of suit or institution of arbitration proceeding against the Insured.

Dkt. 15-1 p. 6. The "retroactive date" means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place. Id. The "policy period" is the period of time stated in the Declarations. Id.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 5

The "Notice of Claim" provision provides:

> The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a Claim. Where notice to the Company of such incidents, occurrences or offenses has been acknowledged as adequate by the Company in writing, subsequent Claims derived from such incidents, occurrences or offenses will be deemed as first made at the time the incident, occurrence or offense giving rise to such Claim was first provided. The Insured also must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any Claim, and must authorize the Company to obtain records and other information.

Dkt. 15-1 p. 7.

RSUI acknowledged receiving the subpoenas in a letter dated May 28, 2008. Dkt. 15-2. This letter advised MSO that the insurer had a right and duty to defend claims that are or may be covered under the policy, and that absent a coverage denial, and assuming a claim as defined in the policy has been made, the insurer will appoint counsel to defend the matter. The letter also states that, pending further investigation, the insurer is proceeding in the matter under a reservation of its rights, with a coverage position to follow pending an investigation of the claim. Id. pp. 1-2.

On June 3, 2008, Robert Orr, RSUI's Vice President for Professional Liability Claims, sent a letter to MSO's sole shareholder, Charles Plunkett, identifying certain provisions of the RSUI policy and noting that the subpoenas served on MSO were not claims and did not trigger a duty to defend or indemnify. Dkt. 15-3. Orr informed MSO that RSUI was treating the report as a notice of potential claim and that it would continue to monitor the matter subject to a full reservation of rights under the policy. Id. p. 5. MSO was also instructed to immediately forward any demands, lawsuits, or other legal pleadings since they could change the coverage analysis. Id. RSUI's analysis of the potential claim provided as follows:

1  The Landmark Policy provides Medical Professional Liability coverage to MSO. Pursuant to the terms of the Policy's Insuring Agreement, the Policy provides coverage for

2 Claims seeking covered damages that arise out of negligent acts, errors or omissions (E&O) attributable to MSO in the rendering or failing to render its medical professional

3 services, which are described in the Policy's Declaration Page as "Medical Outpatient Facility". However, the initial report to Landmark does not identify a medical incident or

4 evidence of an alleged E&O arising out of medical care or treatment of patients by MSO. Rather, the initial report to Landmark is based entirely upon MSO's receipt of subpoenas

5 from the U.S. Department of Health and Human Services seeking information regarding MSO's billing practices. Accordingly, based upon our review of information provided to

6 Landmark with the initial claim report it is c1ear that a claim, as defined by the Policy, has not been made against MSO at this time. The subpoenas served upon MSO do not

7 make a "demand for money or services" against MSO as required by the Policy's definition of a Clam, nor are the subpoenas accompanied by an allegation of a negligent

8 act; error or omission arising from the performance of MSO's described medical professional services. Further, the subpoenas do not seek covered damages against MS0

9 as defined by the Policy's Damages definition. Therefore, for the above reasons, the subpoenas served upon MSO do not rise to the level of a claim as defined by the policy

10 and do not trigger duty to defend or indemnify on the part of Landmark.

11   Dkt. 15-3 p. 4.

12  RSUI did not receive any response to the May 28 and June 3, 2008 letters, and on March

13   26, 2009, RSUI sent another letter to MSO requesting a status update of the potential claim. Dkt.

14   15-4. MSO did not respond. Dkt. 15 p. 2.

15  Correspondence from MSO in late 2009 and early 2010 disclosed that an investigation by

16   DHHS was still underway and that a settlement was expected. Dkt. 15 p. 2.

17  On February 23, 2010, RSUI was notified by MSO that a settlement, subject to court

18   approval, had been reached with DHHS for an amount of $600,000. Dkt. 15-7. On August 23,

19   2010, MSO's legal counsel asked that RSUI fund MSO's anticipated settlement with the United

20   States. Dkt. 15 p. 3. RSUI responded, detailing the previous contacts between MSO and RSUI

21   regarding the potential claim. Dkt. 15-9. RSUI stated that it had never indicated that there was

22   coverage and that it was reserving all its rights. Id. RSUI requested that MSO forward a copy of

23   any lawsuit, demand or other claim may by DHHS against MSO. Id.

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 7

1    On November 4, 2010, RSUI was provided with a copy of the August 3, 2006 complaint

2  in USA v. MSO.  Dkt. 15-10 p. 3.  This is the same date on which DHHS first made the

3  complaint available to MSO.  Dkt. 22 p. 20.

4    On November 30, 2010, RSUI sent correspondence to MSO denying the tender and

5  explaining RSUI's coverage position.   It noted that the policy did not cover the FCA claims

6  against MSO because (1) the complaint did not allege negligence; (2) billing is not a covered

7  professional service; (3) the exclusions for fraud and contractual liability barred coverage; (4) the

8  complaint did not seek covered damages; and (5) the claim was not first made in the policy

9  period.  Dkt. 15-10.

10    MSO later settled its claims with the United States.  On February 4, 2011, the District

11  court entered a stipulation dismissing the claims against MSO and Plunkett.  Dkt. 14-1.  Several

12  months later, in a letter dated November 9, 2011, new counsel representing MSO contended that

13  the RSUI policy covered the claims against MSO and demanded payment of the $600,000

14  settlement amount and $97,160.57 in defense costs.  Dkt. 15-11.  MSO further maintained that

15  RSUI breached the policy, acted in bad faith, and violated IFCA by failing to defend, failing to

16  investigate, and failing to notify MSO promptly of its coverage decisions.  Id.

17    RSUI responded on December 9, 2011, adhering to its previous denial of the claim

18  because the allegations against MSO arose from improper billing practices, which was not a

19  covered professional service of a medical outpatient facility.  Dkt. 15-12 pp. 4-5.  RSUI also

20  stated that the exclusion for dishonesty would preclude coverage.  Dkt. 15-12 p. 5.

21    In August 1012, MSO tendered coverage to RSUI under two additional policies of

22  insurance.  Dkt. 15-13.  A second policy was issued to MSO under Policy No. LHR811238, with

23  a policy period of February 20, 2009, to February 20, 2010.  Dkt. 15-14.  A third policy was

24

1  issued to MSO under Policy No. LHR813359, with a policy period of February 20, 2010, to

2  February 20, 2011.  Dkt. 15-16.  Both of those policies have retroactive dates of February 20,

3  2009.  They differ from the initial 2008-2009 policy in that both subsequent policies list the

4  named insured's professional services as "Physician Practice / Management Services"  Dkt. 15-

5  14 p. 1; Dkt. 15-16 p. 1.  They also both include Miscellaneous Professional

6  Liability Coverage Form – Claims Made Basis.  Dkt. 15-14 pp. 2-3; and Dkt. 15-16. pp. 2-3.

7  This policy form provides the same coverage language as the initial policy.  Compare Dkt. 15-14

8  p. 3 and Dkt 15-16 p. 3 with Dkt. 15-1 p. 3.  These policies also contain the Exclusion for

9  dishonesty.  Dkt. 15-14 p. 5 and Dkt. 15-16 p. 5.

10       In a September 5, 2012 letter, RSUI denied the tender explaining that neither the 2009-

11  2010 nor the 2010-2011 policies covered the claims against MSO because the complaint did not

12  seek damages arising out of negligent acts; the claim was not first made during the policy

13  periods; the alleged acts occurred before the retroactive date of February 2, 2009; the complaint

14  was a dispute over fees, which is not included as damages; and exclusions for dishonest acts,

15  known losses, and administrative actions brought by the federal government applied.  Dkt. 15-15

16  pp. 4-5.  In addition, there was no coverage under 2010-2011 policy because it excluded any

17  claim arising from "[a]ny gain, profit or advantage to which the insured in not legally entitled,"

18  and the complaint alleged actions taken for the purpose of obtaining a gain or profit to which

19  MSO was not legally entitled.  Dkt. 15-15 pp. 5-6.

20       This lawsuit followed.

21                        **SUMMARY JUDGMENT STANDARD**

22       Summary judgment is appropriate only when the pleadings, depositions, answers to

23  interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories,

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 9

1   and other materials in the record show that "there is no genuine issue as to any material fact and

2   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a

3   motion for summary judgment, the evidence, together with all inferences that can reasonably be

4   drawn therefrom, must be read in the light most favorable to the party opposing the motion.

5   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of*

6   *Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

7          The moving party bears the initial burden of informing the court of the basis for its

8   motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex*

9   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of

10  proof, the moving party must make a showing that is sufficient for the court to hold that no

11  reasonable trier of fact could find other than for the moving party.  *Idema v. Dreamworks, Inc*.,

12  162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

13         To successfully rebut a motion for summary judgment, the non-moving party must point

14  to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

15  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact that might

16  affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc*., 477

17  U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

18  summary judgment is not appropriate.  *See v. Durang,* 711 F.2d 141, 143 (9th Cir. 1983).  A

19  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

20  jury could return a verdict for the nonmoving party."  *Anderson,* at 248.  The mere existence of a

21  scintilla of evidence in support of the party's position is insufficient to establish a genuine

22  dispute; there must be evidence on which a jury could reasonably find for the party.  *Id*., at 252.

23         The instant action was removed to this Court based on diversity of the parties.

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 10

1    Accordingly, the issues presented are governed by Washington State law.  See *Insurance Co. N.*

2    *Am. v. Federal Express Corp.*, 189 F.3d 914, 919 (9th Cir. 1999).  Washington State law is clear

3    that the interpretation of policy language contained in an insurance contract is a question of law.

4    *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *State Farm General Ins. Co. v. Emerson*, 102

5    Wn.2d 477, 480 (1984).  Where there are no material facts in dispute, interpretation of the

6    insuring language at issue is appropriately decided on summary judgment.  See *American*

7    *Bankers Ins. v. N.W. Nat. Ins.*, 198 F.3d 1332 (11th Cir. 1999).

8                          **DUTY TO DEFEND AND INDEMNIFY**

9         The rule regarding the duty to defend is well settled in Washington and is broader than

10    the duty to indemnify.  *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000).  The

11    duty to defend arises at the time an action is first brought, and is based on the potential for

12    liability.  *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751 (2002).  An insurer has a duty

13    to defend when a complaint against the insured, construed liberally, alleges facts which could, if

14    proven, impose liability upon the insured within the policy's coverage.  *Id.*; *Unigard Ins. Co. v.*

15    *Leven*, 97 Wn. App. 417, 425 (1999).  An insurer is not relieved of its duty to defend unless the

16    claim alleged in the complaint is clearly not covered by the policy.  *Truck Ins. Exch.*, at 760; *Kirk*

17    *v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998).  Moreover, if a complaint is ambiguous, a court

18    will construe it liberally in favor of triggering the insurer's duty to defend.  *Truck Ins. Exch.*, at

19    760; *R.A. Hanson Co. v. Aetna Ins.* Co., 26 Wn. App. 290, 295 (1980).  The insurer must

20    investigate the claim, that is, consider facts outside the complaint, if (1) coverage is not clear

21    from the face of the complaint but may nonetheless exist, or (2) the allegations are in conflict

22    with facts known to or readily ascertainable by the insurer, or the allegations of the complaint are

23

24

1  ambiguous or inadequate.  *Holly Mountain Resources, Ltd. v. Westport Ins. Corp.*, 130 Wn. App.

2  635, 647 (2005)

3        In contrast, the duty to indemnify "hinges on the insured's actual liability to the claimant

4  and actual coverage under the policy."  *Hayden*, 141 Wash.2d at 64.  In sum, the duty to defend

5  is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas

6  the duty to indemnify exists only if the policy actually covers the insured's liability.

7        **Notice of Claim and Subsequent Policies**

8        The notice-of-claim provision in all three policies provides that the insured must notify

9  the insurer soon as practicable of an incident, occurrence or offense that may reasonably be

10  expected to result in a claim.  Where notice to the insurer of such incidents, occurrences or

11  offenses has been acknowledged as adequate by the insurer in writing, subsequent claims derived

12  from such incidents, occurrences, or offenses will be deemed as first made at the time the

13  incident, occurrence or offense giving rise to such Claim was first provided.

14        MSO notified RSUI of the receipt of the False Claim Act subpoenas on May 23, 2008.

15  RSUI acknowledged receipt of the subpoenas and informed MSO in writing that if would treat

16  the subpoenas as a notice of potential claim.  The receipt of further claim information, including

17  receipt of the actual FCA complaint in 2010, relates back to the original notice of the potential

18  claim in 2008, and is deemed to have been reported at that time.  Accordingly, any coverage, or

19  duty to defend, under the claims made policies is confined to the initial 2008-2009 policy.

20        The subsequent policies provide insurance coverage for certain claims, provided that the

21  negligent act, error, or omission took place after the retroactive date in the declarations.  The

22  retroactive date for the 2009-2010 and 2010-2011 policies is February 2, 2009.  Because the

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 12

1   claim arose prior to this retroactive date, there is no duty to defend or indemnify under these

2   subsequent policies.

3   **Professional Services Under Initial Policy**

4   The 2008-2009 RSUI policy covers negligence "in the rendering of or failure to render

5   professional services as described in the Declarations."  The Declarations identify the named

6   insured's professional services as "Medical Outpatient Facility."  RSUI denied a duty to defend

7   and to indemnify because the alleged claim was for wrongful Medicare and Medicaid billing; an

8   activity that is not a professional service of a medical facility.

9   The courts in this District and elsewhere have unanimously concluded that the

10  submission of billing claims under the FCA does not qualify as a "professional service."   See

11  *Chicago Ins. Co. v. Center for Counseling & Health Resources*, 2011 WL 1222792 (W.D. Wash.

12  2011); *Zurich Am. Ins. Co. v. O'Hara Regional Ctr. for Rehabilitation,* 529 F.3d 916, 925 (10th

13  Cir. 2008); *Cohen v. Empire Cas. Co*., 771 P.2d 29, 31 (Colo. Ct. App. 1989); *Medical Records*

14  *Assoc., Inc. v. Am. Empire Surplus Lines Ins. Co*., 142 F.3d 512, 515-516 (1st Cir. 1998));

15  *Horizon West, Inc. v. St. Paul Fire & Marine Ins. Co*., 214 F. Supp. 2d 1074, 1079 (E.D. Cal.

16  2002).

17  MSO attempts to avoid this conclusion by arguing that its professional services are

18  distinguishable from the professional services of the medical practitioners addressed in the

19  foregoing cases.  MSO argues that it is not a provider of medical care to patients, where billing

20  may be considered ancillary, but that it is a medical management services profession providing

21  billing services for its health care providers.

22  While this may be true, MSO represented to RSUI in the issuance of the initial policy that

23  it was providing primary care as a medical outpatient facility, and RSUI issued the medical

24

professional liability policy on that basis.  MSO cannot claim otherwise to create an issue of coverage.

In sum, billing services are not covered professional services under the initial 2008-2009 insurance contract and there was no duty to defend or indemnity.

**False Claims Act and Negligent Errors and Omission Coverage**

The insurance coverage provided MSO covers negligence in rendering professional services.  The insuring agreements provide coverage for damages and associated claim expenses arising out of a "negligent act, error or omission … in the rendering of or failure to render professional services …"  Accordingly, for a claim to be covered it must allege negligent conduct.

The notice of potential claim (issuance of the subpoenas) and the subsequent complaint allege violations of the False Claims Act (FCA).  The complaint alleges two causes of action under the FCA - one under § 3729(a)(1) (presenting false claims for payment or approval), and one under § 3729(a)(2) (knowingly making or using a false record or statement for purposes of obtaining payment by the government on a false or fraudulent claim).

The FCA makes liable anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement" that is material to a "false claim for payment or approval" by the United States government.   31 U.S.C. § 3729(a)(1).  Liability pursuant to § 3729(a)(2) applies to anyone who  knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government."  *U.S. ex rel. Putnam v. Eastern Idaho Regional Medical Center*, 696 F.Supp.2d 1190, 1205 (D. Idaho 2010).

The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 14

1   pay out money or forfeit moneys due.  *U.S. v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir.

2   2011).  The FCA requires more than just a false statement-it requires that the defendant knew the

3   claim was false.  *United States ex rel. Oliver v. Parsons*, 195 F.3d 457, 464 (9th Cir. 1999).

4        A party cannot be held liable pursuant to the FCA for mere negligence.  For liability to

5   attach, there must be the knowing presentation of what is known to be false.  *U.S. ex rel. Hagood*

6   *v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).  An innocent mistake or

7   negligence will not support a FCA claim.  *U.S. v. Bourseau*, 531 F.3d 1159, 1167 (9th Cir.

8   2008); *U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1150 (9th Cir.

9   2004).  Gross negligence is insufficient to establish liability under the FCA.  *U.S. ex rel. Rakow*

10  *v. Pro Builders Corp*. 37 Fed. Appx. 930, 931 (9th Cir. 2002); *United States ex rel. Hochman v.*

11  *Nackman,* 145 F.3d 1069, 1073 (9th Cir. 1998).

12       The notice of a FCA claim does not fall within the coverage provisions of the subject

13  policies for damages arising out of a negligent act, error or omission.  See *Zurich American Ins.*

14  *Co. v. O'Hara Regional Center for Rehabilitation*, 529 F.3d 916, 922-23 (10th Cir. 2008).

15       RSUI had no duty to defend or indemnity the FCA claim.

16  **Dishonesty Exclusion**

17       The three insurance policies at issue all contain the exclusion of coverage for "dishonest,

18  fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of

19  the insured."

20       Liability under the FCA involves dishonesty.   "The requisite scienter is the knowing

21  presentation of what is known to be false and . . . 'known to be false' does not mean

22  scientifically untrue; it means a lie." *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073

23  (9th Cir. 1998)(citations omitted).  The FCA claim falls within the dishonest act exclusion and

24

1    RUSI had no duty to defend or indemnify MSO.  See *International Ass'n of Chiefs of Police, Inc.*

2    *v. St. Paul Fire and Marine Ins. Co.*, 686 F. Supp. 115 (D. Md. 1988).

3            Pursuant to the exclusion for dishonest acts RSUI had no duty to defend or indemnify

4    MSO.

5                              **EXTRA-CONTRACTUAL CLAIMS**

6            **Rule 56(d) Continuance to Allow Discovery**

7            MSO requests a continuance of RUSI's motion for summary judgment on the extra-

8    contractual claims pursuant to Fed. R. Civ. P. 56(d).  A party requesting a continuance, denial, or

9    other order under Rule 56(d) must demonstrate: (1) it has set forth in affidavit form the specific

10   facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after

11   facts are essential to oppose summary judgment.  *Family Home & Fin. Ctr., Inc. v. Fed. Home*

12   *Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772,

13   779 (9th Cir. 1998).  The rule requires (a) a timely application which (b) specifically identifies

14   (c) relevant information, (d) where there is some basis for believing that the information sought

15   actually exists.  *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,

16   353 F.3d 1125, 1129 (9th Cir. 2004).  The burden is on the party seeking additional discovery to

17   proffer sufficient facts to show that the evidence sought exists, and that it would prevent

18   summary judgment.  *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001);

19   *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  The movant

20   "must make clear what information is sought and how it would preclude summary judgment."

21   *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).  Denial of a Rule 56(d ) application is

22   proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of

23   pure speculation.  *State of Cal., on Behalf of California Dept. of Toxic Substances Control v.*

24

1  *Campbell*, 138 F.3d 772, 779-80 (9th Cir. 1998).  Failing to meet this burden is grounds for the

2  denial of a Rule 56(d) motion.  *Pfingston v. Ronan Eng. Co.,* 284 F.3d 999, 1005 (9th Cir. 2002).

3      MSO argues that it should be provided the opportunity to conduct discovery in regard to

4  the investigation which RSUI conducted in regard to the FCA claim, particularly in light of the

5  enhanced duties under a reservation of rights.  Dkt. 21.

6      The issues regarding RSUI's investigation of the claim appear to lack any merit.  As

7  previously discussed, the underlying FCA action against MSO is not within the coverage

8  provided in any of the policies of insurance.  There is no duty to defend or indemnify the claim.

9  MSO has not demonstrated the existence or the necessity of discovery of additional facts relevant

10  to the issue of a proper investigation of the claim.

11      The motion for a Rule 56(d) continuance should be denied.

12  **Bad Faith Claim**

13      Insurer bad faith claims are analyzed applying the same principles as any other tort: duty,

14  breach of that duty, and damages proximately caused by any breach of duty.  *Mutual of*

15  *Enumclaw Ins. Co. v. Dan Paulson Constr. Co.,* 161 Wn.2d 903, 916 (2007).  In order to

16  establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or

17  unfounded.  *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558 (1998).

18      An insurer has a duty to act with reasonable promptness in investigation and

19  communication with their insureds following notice of a claim and tender of defense.  *St. Paul*

20  *Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 132 (2008).  An unreasonable, frivolous,

21  or unfounded breach of this duty is bad faith.  *Id.*

22      Harm is an essential element of an action for an insurance company's bad faith handling

23  of a claim. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 1323 (2008).  If the

24

1  insured shows by a preponderance of the evidence that the insurance company breached its duty

2  of good faith, there is a presumption of harm.  *Id.*  The insurance company can rebut this

3  presumption by showing by a preponderance of the evidence that its breach did not harm or

4  prejudice the insured.  *Id.*

5          In actions for bad faith, a denial is reasonable if it is performed in good faith under an

6  arguable interpretation of existing law.  *Shields v. Enter. Leasing Co*., 139 Wn.App. 664 (2007).

7  An insurer is entitled to summary judgment on a policyholder's bad faith claim if there are no

8  disputed material facts pertaining to the reasonableness of the insurer's conduct, or the insurance

9  company is entitled to prevail as a matter of law on the facts construed most favorably to the

10  nonmoving party.  See *Smith v. Safeco Ins. Co*., 150 Wn.2d 478, 486 (2003).

11          RSUI had no duty to defend or indemnify MSO under any of the policies.  The claims

12  against MSO were for fraudulent billing practices, and fraudulent billing is not a professional

13  service or a negligent act covered by the first RSUI policy.  The 2009-2010 and 2010-2011

14  policies do not cover the loss because the alleged wrongful acts occurred before the retroactive

15  date of those policies, and the policies do not cover negligent acts.

16          RSUI is entitled to summary judgment on the bath faith claim.

17  **Insurance Fair Conduct Act**

18          The Insurance Fair Conduct Act (IFCA), RCW 48.30.015, provides as follows:

19          (1) Any first party claimant to a policy of insurance who is unreasonably denied a claim
               for coverage or payment of benefits by an insurer may bring an action in the superior
20             court of this state to recover the actual damages sustained, together with the costs of
               the action, including reasonable attorneys' fees and litigation costs, as set forth in
21             subsection (3) of this section.

22          The IFCA further provides that a court "may, after finding that an insurer has acted

23  unreasonably in denying a claim for coverage or payment of benefits or has violated [certain

24

insurance regulations], increase the total award of damages to an amount not to exceed three times the actual damages."  RCW 48.30.015(2).  A court "shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorney's fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action."  RCW 48.30.015(3).  The statute provides a list of WAC violations that give rise to treble damages or to an award of attorney's fees and costs.

Although violations of the enumerated regulations provide grounds for trebling damages or for an award of attorney's fees; they do not, on their own, provide a IFCA cause of action absent an unreasonable denial of coverage or payment of benefits.  See *Weinstein & Riley, P.S. v. Westport Ins. Corp.*, 2011 WL 887552 (W.D. Wash. 2011); *Travelers Indem. Co. v. Bronsink*, 2010 WL 148366 (W.D. Wash. 2010); *Lease Crutcher Lewis WA, LLC v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*,  2010 WL 4272453 (W.D. Wash. 2010).

MSO has not raised a material issue of fact supporting an unreasonable denial of the claim or any unreasonable violation of any enumerated regulations.  There is no evidence that RSUI failed to disclose or concealed benefits, coverages, or other provisions of insurance, or to provide reasonable assistance to its insured.  There was no coverage and no duty to defend under the applicable policies.

The IFCA claim is subject to dismissal.

**Consumer Protection Act Claim**

To establish a violation of the Washington Consumer Protection Act (CPA), a plaintiff must demonstrate: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986); RCW 19.86.060.   Violations of WAC 284-30-330 may constitute per se violations of the CPA, provided the other *Hangman Ridge* factors are also met.   *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 764 (2002).  In addition, an insurer's bad faith constitutes a per se violation of the CPA. *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn.App. 1, 12 (2009).

The CPA claim fails for the same reasons as the IFCA and bad faith claims.  MSO has failed to establish a genuine issue of fact that there was a breach of a duty of care.

The Consumer Protection Act claim is subject to dismissal.

**Negligence**

MSO asserts that RSUI failed to exercise ordinary care in investigating and handling the tender of defense of the FCA claim.

A negligence cause of action requires proof of four elements, (1) duty, (2) breach of that duty, (3) damages, (4) proximately caused by the breach.  *Hartley v. State*, 103 Wn.2d 768 (1985).  The analysis of a negligence cause of action is essentially the same as that of a claim of bad faith.  See *Hamilton v. State Farm*, 83 Wn.2d 787 (1974).

MSO having failed to establish a cause of action for bad faith, the negligence action is also subject to dismissal.

**CONCLUSION**

There are no issues of material fact.  RSUI had no duty to defend or indemnify MSO under any of the policies.  The FCA claims against MSO were for fraudulent billing practices, and fraudulent billing is not a professional service or a negligent act covered by the 2008-2009 RSUI policy. The 2009-2010 and 2010-2011 policies do not cover the loss because the alleged wrongful acts occurred before the retroactive date of those policies and the policies do not cover

the claim acts.  The non-contractual claims for violation of the CPA, IFCA, bath faith, and negligence are subject to dismissal as there is no evidence creating a material issue of fact supporting these claims and MSO has not sustained its burden of demonstrating that a continuance is appropriate.

Therefore, it is hereby **ORDERED:**

Defendants' Motion for Summary Judgment (Dkt. 13) is **GRANTED.**  Plaintiff's  request for a Fed. R. Civ. P. 56(d) continuance is **DENIED**.  All claims filed by Plaintiff MSO Washington, Inc. are **DISMISSED WITH PREJUDICE.**

Dated this 8th day of May, 2013.

ROBERT J. BRYAN
United States District Judge